IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANGELA LYNN MCFALLS, | ) | CASE NO. 12-66485-JRS |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BAYVIEW LOAN SERVICING, LLC, A | ) | |
| DELAWARE LIMITED LIABILITY | ) | |
| COMPANY, | ) | CHAPTER 13 |
| | ) | |
| Movant. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANGELA LYNN MCFALLS, | ) | |
| ADAM M. GOODMAN, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |

MOTION TO APPROVE LOAN MODIFICATION

COMES NOW Movant and shows this Court the following:

1.

This is a Motion to allow the parties to enter into a loan modification. Movant seeks an Order approving the loan modification to which the parties have agreed.

2.

Movant services a loan on property known as 175 Church Road, Stockbridge, Georgia 30281.

3.

On or about May 6, 2014, the parties agreed to modify the loan. A copy of said agreement is attached. Said loan modification will have a new principal balance of $144,930.11, comprised of a non-interest bearing deferred principal of $933.41, and an interest bearing unpaid principal balance

of $143,996.70 with a fixed interest rate of 5.00% . The initial estimated monthly payment shall be $933.41, comprised of principal and interest in the amount of $694.80 and current monthly escrow collection currently comprised of $238.61.

4.

The parties believe that this Agreement is in the Debtors' best interest, and Movant seeks an Order approving the modification, including, but not limited to, the execution and recording of the finalized loan modification agreement and any other related documents.

5.

Upon approval, the Chapter 13 Trustee may cease continued funding of Movant's prepetition claim, if any, and Movant may amend its claim accordingly.

WHEREFORE, Movant prays

(a) That its Motion be granted so as to permit the Movant and Debtor(s) to enter into the loan modification agreement previously described and attached to this Motion;

(b) That the Movant, at its option, be permitted to contact the Debtor(s) via telephone or written correspondence regarding this modification and/or any other potential loan workout or loss mitigation agreement;

(c) For such other and further relief that is just and proper.

/s/
_____
A. MICHELLE HART IPPOLITI, GEORGIA BAR NO. 334291
Attorney for Movant
McCalla Raymer, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6537
770-643-4220
mh1@mccallaraymer.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| ANGELA LYNN MCFALLS, | : | CASE NO. 12-66485-JRS |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, | : | |
| | : | |
| | : | |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| | : | |
| ANGELA LYNN MCFALLS, | : | |
| ADAM M. GOODMAN, Trustee, | : | |
| | : | |
| Respondents. | : | |
| | : | |

NOTICE OF HEARING

PLEASE TAKE NOTICE that Movant has filed a Motion to Approve Loan Modification.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion in Courtroom 1404, United States Bankruptcy Court, 75 Spring Street SW, Atlanta, Georgia 30303 at 2:00 P.M. on July 10, 2014.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.

*(Remainder of page intentionally left blank)*

.

The address of the Clerk's Office is: Clerk, United States Bankruptcy Court, 75 Spring Street South West, Suite 1340, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

Dated: <u>06/10/2014</u>                 _____/s/_____

A. Michelle Hart Ippoliti, Georgia Bar No. 334291
Counsel for Movant
McCalla Raymer, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6537
770-643-4220
mh1@mccallaraymer.com

File No. 53041909-3

BANKRUPTCY CASE NO. 12-66485-JRS

CHAPTER  13

CERTIFICATE OF SERVICE

I, A. Michelle Hart Ippoliti, of McCalla Raymer, LLC, 1544 Old Alabama Road, Roswell, Georgia  30076-2102, certify:

That on the date below, I served a copy of the within NOTICE OF ASSIGNMENT OF HEARING, together with the "MOTION TO APPROVE LOAN MODIFICATION" filed in this bankruptcy matter on the attached matrix and on the following parties at the addresses shown, by regular United States Mail, postage prepaid, unless another manner of service is expressly indicated:

Angela Lynn McFalls
175 Church Road
Stockbridge, GA 30281

E. L. Clark                                    *(served via email at ecfnotices@cw13.com)*
Clark & Washington, P.C.
Bldg. 3
3300 Northeast Expwy.
Atlanta, GA 30341

Adam M. Goodman                         *(served via email)*
Adam M. Goodman, 13 Trustee
Suite 200
260 Peachtree Street
Atlanta, GA 30303

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on    06/10/2014    By:    /s/
                      (date)              A. MICHELLE HART IPPOLITI
                                          Georgia Bar No. 334291
                                          Counsel for Movant

```
Label Matrix for local noticing        American Express Centurion Bank       American Express Centurion Bank
113E-1                                  4315 South 2700 West                  c o Becket and Lee LLP
Case 12-66485-jrs                       Salt Lake City, UT 84119              POB 3001
Northern District of Georgia                                                  Malvern, PA 19355-0701
Atlanta
Wed Jun  4 14:52:04 EDT 2014

American InfoSource LP as agent for     BANK OF AMERICA, N.A.                 Bank Of America, N.A.
InSolve Recovery, LLC                   BANKRUPTCY DEPARTMENT                 450 American St
PO Box 269093                           MAIL STOP CA6-919-01-23               Simi Valley, CA 93065-6285
Oklahoma City, OK  73126-9093           400 NATIONAL WAY
                                        SIMI VALLEY, CA 93065-6414

Bank Of America, N.A.                   Bayview Loan Servicing, LLC           E. L. Clark
c/o Aldridge Connors LLP                4425 Ponce De Leon Blvd               Clark & Washington, P.C.
3575 Piedmont Road NE                   5th Floor                             Bldg. 3
#500                                    Coral Gables, FL 33146-1837           3300 Northeast Expwy.
Atlanta, GA 30305-1623                                                        Atlanta, GA 30341-3934

Matthew J. Dyer                         Adam M. Goodman                       A. Michelle Hart Ippoliti
Aldridge Connors, LLP                   Adam M. Goodman, 13 Trustee           McCalla Raymer, et al
Suite 500 - Fifteen Piedmont Center     Suite 200                             1544 Old Alabama Road
3575 Piedmont Road, NE                  260 Peachtree Street                  Roswell, GA 30076-2102
Atlanta, GA 30305-1636                  Atlanta, GA 30303-1236

Brian K. Jordan                         Angela Lynn McFalls                   John D. Schlotter
McCalla Raymer, LLC                     175 Church Road                       Aldridge Connors LLP
1544 Old Alabama Road                   Stockbridge, GA 30281-1023            Fifteen Piedmont Center - Suite 500
Roswell, GA 30076-2102                                                        3575 Piedmont Rd., NE
                                                                              Atlanta, GA 30305-1636

Lucretia Scruggs                        U.S. Department of HUD
McCalla Raymer, LLC                     c/o Deval LLC
1544 Old Alabama Road                   1255 Corporate Drive, #300
Roswell, GA 30076-2102                  Irving, TX 75038-2585
```

                    The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)American Express Centurion Bank      (d)BANK OF AMERICA, N.A.              (u)Bank of America
4315 South, 2700 West                   BANKRUPTCY DEPARTMENT
Salt Lake City, UT 84119                MAIL STOP CA6-919-01-23
                                        400 NATIONAL WAY
                                        SIMI VALLEY, CA 93065-6414


(u)Bayview Loan Servicing, LLC          End of Label Matrix
                                        Mailable recipients    16
                                        Bypassed recipients     4
                                        Total                   20
```

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Jennifer McGovern
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

_____ *[Space Above This Line For Recording Data]*_____

## HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I")1:            ANGELA L MCFALLS and DAVID MCFALLS

Lender or Servicer ("Lender"): Bayview Loan Servicing, LLC

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):    04/10/2002

Loan Number:            ████████

Property Address ("Property"): 175 CHURCH ROAD, STOCKBRIDGE, GA 30281

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

1 If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** - Single Family    - Fannie Mae / Freddie Mac UNIFORM
**INSTRUMENT Form 3157** V 1.3 3/09 (rev. 10/10)  Loan No.: ████████         *(Page 1 of 5 pages)*

G. I have made or will make all payments required under a trial period plan.

2.   **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.**

If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 02/01/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 02/01/2014.

    A. The new Maturity Date will be: 01/01/2054.

    B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $144,930.11 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C. $933.41 of the New Principal Balance shall be deferred (the  Deferred Principal Balance ) and I will not pay interest or make monthly payments on this amount.  The New Principal Balance less the Deferred Principal Balance shall be referred to as the Interest Bearing Principal Balance and this amount is $143,996.70. Interest at the rate of 5.00% will begin to accrue on the Interest Bearing Principal Balance as of 01/01/2014 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 02/01/2014.  My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment Amount | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 5.00% | 01/01/2014 | $694.80 | $238.61 | $933.41 | 02/01/2014 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

    D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents,

as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items.". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT  - Single Family    - Fannie Mae / Freddie Mac UNIFORM
INSTRUMENT Form 3157 V 1.3 3/09 (rev. 10/10)  Loan No.: ▉▉▉▉    *(Page 3 of 5 pages)*

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

IN WITNESS WHEREOF, the Lender and I have executed this Agreement.

**Borrower:**

By: _____     Date: 5/6/14
     Angela L McFalls

By: _____     Date: 05/06/2014
     David McFalls

**Lender:**

By: _____     Date: 5/9/14
     Bayview Loan Servicing, LLC

Licensed Loan Originator: Ivette Perez
MLO License Number: ███████
Phone Number: (877) 650-0140 Ext. 6524 Monday - Friday 9:00 am to 6:00 pm ET
Fax Number:    (877) 360-9593

_____ [Space Below This Line For Acknowledgement] _____

**NOTARY ACKNOWLEDGEMENT**

STATE OF ___Georgia___ )

)  SS

COUNTY OF ___Gwinnett___ )

On ___5/6/14___, before me, ___Irmine Dieudonne___ a notary public for and within the said county, personally appeared, ___Angela L McFalls,___ ___David McFalls___, as the Borrower(s), personally known to me *(or proved to me on the basis of satisfactory evidence)* to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) on the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Sherita V. Jones*
05/06/2014

*J. A. Hoossaingi*
05/06/2014.

By: _____

Notary Public: ___Irmine Dieudonne___

My Commission Expires: ___8/30/2015___

IRMINE DIEUDONNE
MY COMMISSION EXPIRES
NOTARY
PUBLIC
AUGUST 30, 2015
GWINNETT COUNTY, GEORGIA

AM013   Loan No.: ███████



**BAYVIEW**
LOAN SERVICING

Loan No

SERVICER SIGNATURE:

STATE OF FLORIDA            )
                           ) SS
COUNTY OF MIAMI DADE       )

On <u>5/9/2014</u>, before me, <u>LETITIA PREDDY</u>, a notary public for and within the said county, personally appeared, <u>ELIOT GELBER</u> OF Bayview Loan Servicing, LLC, as Servicer, whose address is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Florida 33146, personally known to me (or provided to me on the basis of satisfactory evidence) to be the person(s) whose name is subscribed to the within instrument and acknowledge to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person acted, executed the instrument.

WITNESS my hand and official seal.

(SEAL)

Notary Public State of Florida
Letitia Preddy
My Commission FF 030546
Expires 06/24/2017

By: _Letitia Preddy_

Notary Public: <u>LETITIA PREDDY</u>

Notary Public for the State of Florida

My commission expires: _06/24/2017_

Bayview Loan Servicing, LLC.
4425 Ponce de Leon Blvd, Coral Gables, 33146



BOOK **4935** PAGE **132**

DOC# 018039
FILED IN OFFICE
04/17/2002
02:01:29PM
BK:04935 PG:0132-
JUDITH A. LEWIS *142*
CLERK OF
SUPERIOR COURT
HENRY COUNTY, GA

GEORGIA INTANGIBLE TAX
HENRY COUNTY
SUPERIOR COURT

APR 17 2002

PAID $  480.00

CLERK OF SUPERIOR COURT

Return To:
JANE DOCMAN
MS SV-79 DOCUMENT PROCESSING
1800 Tapo Canyon
Simi Valley, CA 93063-6712

RETURN TO WINDHAM & SAULS, P.C.
P O BOX 870008 • MORROW, GA 30287-0008

Prepared By:
D. JONES

———————————— [Space Above This Line For Recording Data] ————————————

███████7729                                          ███████077
[Case #]                                             [Doc ID #]

**State of Georgia**

# SECURITY DEED

MIN ████████083-3

   THIS SECURITY DEED ("Security Instrument") is given on APRIL 11, 2002          . The Grantor is
ANGELA L MCFALLS, HUSBAND AND WIFE AS JOINT TENANTS AND DAVID MCFALLS
JR, HUSBAND AND WIFE AS JOINT TENANTS

and whose address is
175 CHRUCH ROAD, STOCKBRIDGE, GA 30281-
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as
nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026,
tel. (888) 679-MERS.
COUNTRYWIDE HOME LOANS, INC.
("Lender") is organized and existing under the laws of NEW YORK                      , and has an address of
4500 Park Granada, Calabasas, CA 91302-1613
Borrower owes Lender the principal sum of
ONE HUNDRED FIFTY NINE THOUSAND SEVEN HUNDRED FORTY FOUR and 00/100
Dollars (U.S. $  159,744.00     ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on MAY 01, 2032          . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,
Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns),
and the successors and assigns of MERS, with power of sale, the following described property located in

Initials

**FHA Georgia Security Deed with MERS - 4/96**        Page 1 of 6
██ -4N(GA) (0102)    CHL (02/01)       VMP MORTGAGE FORMS - (800)521-7291                    Amended 2/01

+10

CASE #:▓▓▓▓▓▓▓7729                                    DOC ID #▓▓▓▓▓▓▓7077
HENRY          County, Georgia:
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 196 OF THE
12TH DISTRICT OF HENRY COUNTY, GEORGIA AND BEING 1.031 ACRES DESIGNATED
AS LOT 4 ON PLAT OF SURVEY PARPARED FOR JOEL A . FIGUEROA AND GINA E.
GIGUEROA BY RICHARD T. CONNER GA RLS #1075, DATED MAY 31, 1994, FILED
FOR RECORD AT PLAT BOOK 23, PAGE 201, HENRY COUNTY, GEORGIA RECORDS.
SAID PLAT IS SPECIFICALLY INCORPORATED HEREIN BY THIS REFERENCE.

which has the address of 175 CHRUCH ROAD, STOCKBRIDGE
                                            [Street, City]

Georgia   30281 -          ("Property Address");
         [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, for but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4N(GA) (0102)    CHL (02/01)         Page 2 of 6                          Initials: [signature]

CASE #: ████████7729                          DOC ID #: ████████7077

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

Initials: _(signatures)_

CASE #: ████████7729                                   DOC ID # ██████████7077

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Initials: _____

BOOK **4935** PAGE **136**

CASE #: ██████7729                    DOC ID # ██████7077

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.**

**If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider | ☒ Other [specify] |
| ☐ Planned Unit Development Rider | ☐ Graduated Payment Rider | WAIVER OF BORROWERS RIGHTS |
| | | & ADJUSTABLE RATE RIDER |

Initials: _(signature)_

Ⓜ️ -4N(GA) (0102)    CHL (02/01)                    Page 5 of 6

CASE #: ██████████7729                    DOC ID # ████████7077

   BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
Unofficial Witness                  ANGELA L MCFALLS              -Borrower

                                    _____ (Seal)
                                    DAVID  MCFALLS JR              -Borrower

                                    _____ (Seal)
                                                                  -Borrower

                                    _____ (Seal)
                                                                  -Borrower

_____
Notary Public,                                        County



BOOK **4935** PAGE **138**

# ADJUSTABLE RATE RIDER

**WHEN RECORDED MAIL TO:**
JANE DOCMAN

SPACE ABOVE FOR RECORDERS USE

MSN SV-79 / DOCUMENT CONTROL DEPT.
P.O. BOX 10266
VAN NUYS, CALIFORNIA 91410-0266

By: DEBORAH JONES

DOC ID #: ▓▓▓▓▓▓▓7077
ESCROW/CLOSING #:

---

| FHA CASE NO. |
| ▓▓▓▓▓▓▓7729 |

THIS ADJUSTABLE RATE RIDER is made this 11th day of April   , 2002, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to COUNTRYWIDE HOME LOANS, INC.
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
175 CHRUCH ROAD, STOCKBRIDGE GA, 30281-
[Property Address]

Page 1 of 4          FHA Multistate ARM Rider - 10/95

VMP -591U (9705).02 CHL (03/01)   VMP MORTGAGE FORMS - (800)521-7291      Initials: 

BOOK **4935** PAGE **139**

CASE #: ▮▮▮▮▮▮▮7729                              DOC ID # ▮▮▮▮▮▮▮7077

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Date**
    The interest rate may change on the first day of July          , 2003   , and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

    **(B) The Index**
    Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. As used in this Rider, "Secretary means the Secretary of Housing and Urban Development or his or her designee." Lender will give Borrower notice of the new Index.

    **(C) Calculation of Interest Rate Changes**
    Before each Change Date, Lender will calculate a new interest rate by adding a margin of TWO & THREE-QUARTERS           percentage point(s) ( 2.750     %) to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in paragraph (D) of this Rider, this rounded amount will be the new interest rate until the next Change Date.

    **(D) Limits on Interest Rate Changes**
    The existing interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate, as stated in paragraph 2 of the Note.

**VMP** -591U (9705).02 CHL (03/01)              Page 2 of 4                    Initials: _____

BOOK **4935** PAGE **140**

CASE #: ███████7729                          DOC ID # █████████7077

#### (E) Calculation of Payment Change

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

#### (F) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

#### (G) Effective Date of Changes

A new interest rate calculated in accordance with paragraphs (C) and (D) of this Rider will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by paragraph (F) of this Rider. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with paragraph (E) of this Rider for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with paragraph (E) of this Rider decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if the Note is otherwise assigned before the demand for return is made.

🆅🅼🅿®  -591U (9705).02  CHL (03/01)                Page 3 of 4                    Initials: _BP_

BOOK **4935** PAGE **141**

CASE #: ▉▉▉▉▉▉▉7729                    DOC ID # ▉▉▉▉▉▉▉7077

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
ANGELA L MCFALLS                                          - Borrower

_____ (Seal)
DAVID  MCFALLS JR                                          - Borrower

_____ (Seal)
                                                                        - Borrower

_____ (Seal)
                                                                        - Borrower

Page 4 of 4

-591U (9705).02 CHL (03/01)

BOOK 4935 PAGE 142

Prepared by: D. JONES

CASE #: ████████7729
GEORGIA
GRANTOR: ANGELA L MCFALLS                                                    et al
LENDER: COUNTRYWIDE HOME LOANS, INC.
DATE OF SECURITY DEED: 04/11/2002

DOC ID #: ████████7077

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____        Angela L. McFalls _____ (Seal)
                                          ANGELA L MCFALLS                   -Grantor

_____        David McFalls Jr _____ (Seal)
                                          DAVID MCFALLS JR                   -Grantor

_____        _____ (Seal)
                                                                            -Grantor

_____        _____ (Seal)
                                                                            -Grantor

*[Notary seal: ARTHUR S. BARBEE, NOTARY PUBLIC, GEORGIA, FAYETTE COUNTY, MY COMMISSION EXPIRES MAY 15, 2005]*

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me                                           on the date set forth above.

_____                        _____
                    Notary Public                                          Closing Attorney

*[Notary seal: NOTARY PUBLIC]*

## FORECLOSURE CLOSING DISCLOSURE

"O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure."

Angela L. McFalls _____        _____
Borrower ANGELA L MCFALLS                     Borrower

David McFalls Jr _____         _____
Borrower DAVID MCFALLS JR                     Borrower

VMP -960(GA) (9401).02    CHL (05/01)          VMP MORTGAGE FORMS - (800)521-7291          1/94

BOOK    PAGE
011563  0164

FILED IN OFFICE
11/25/2009   03:31 PM
BK:11563  PG:164-164
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT
HENRY COUNTY

Our File No.: ███████-FT11
Debtor: Angela L Mcfalls and David Mcfalls, Jr.
Sale Date: 12/01/2009

Return to
Prommis Solutions, LLC
1544 Old Alabama Road
Roswell, GA 30076

## ASSIGNMENT

STATE OF

COUNTY OF

For value received, Mortgage Electronic Registration Systems, Inc. has this day transferred, sold, assigned, conveyed and set over to U.S. Bank National Association as Trustee for the Benefit of the Certificateholders CWMBS, Inc. Reperforming Loan Remic Trust Certificates, Series 2005-R3, whose address is 177 Countrywide Way, Mail Stop: CAO-911-01-05, Lancaster, CA 93536, as Assignee, its successors, representatives and assigns, all its right, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by Angela L Mcfalls and David Mcfalls, Jr. to Mortgage Electronic Registration Systems, Inc., dated April 11, 2002, recorded in Deed Book 4935, Page 132, Henry County, Georgia Records.

Property Address: 175 Chruch Road, Stockbridge, GA 30281

The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Security Deed, the property described therein, the indebtedness secured thereby together with all the powers, options, privileges and immunities therein contained.

The Assignor herein has this day sold and assigned to the Assignee herein the note secured by the aforesaid Security Deed and this transfer is made to secure the Assignee, its successors, representatives and assigns, in the payment of said note.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal this September 8, 2009.

Signed, sealed and delivered
in the presence of:

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

_____
Unofficial Witness

By: _____
Printed Name: Troy Crouse
Title: Vice President

_____
Notary Public
My Commission Expires:

By: _____
Printed Name: Thomas A. Sears
Title: Assistant Secretary
(Corporate Seal)



# AMENDED AND RESTATED NOTE
**Multistate**

| FHA Case NO: |
|---|
| ████████7729 |
| DocID#: |
| ████████105A |

Origination Date: 04/11/2002
175 Chruch Road
Stockbridge, GA  30281

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.  "Lender" means BAC Home Loans Servicing, LP and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Eighty Two Thousand, Two Hundred Seventy Two Dollars And Ninety Five Cents. (Dollars U.S.) $182,272.95 plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Five And 25/100 Percent., (5.25%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument".  The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A)  Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on July 1, 2011.  Any principal and interest remaining on the first day of February 1, 2035 will be due on that date, which is called the "Maturity Date".

### (B)  Place
Payment shall be made to 279837 Payment Processing, PO Box 650070  Dallas, TX  75265-0070 or at such place as Lender may designate in writing by notice to Borrower.

### (C)  Amount
Each monthly payment of principal and interest will be in the amount of U.S. $1,122.28.  This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D)  Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.  [Check applicable box]

☐ Graduated Payment Allonge        ☐ Growing Equity Allonge        ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

████████105A                          Page 1 of 3
                              FHA Amndd Rsttd Note–Multi  11339  02/10/2010

Initials _____

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four Percent,, (4.00%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

## 10. GROUNDS FOR ACCELERATION OF DEBT

### (A) Default

Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

Initials

FHA Amndd Rsttd Note–Multi 11339 02/10/2010

**(B)  Sale Without Credit**

Lender shall, if permitted by applicable law (including section 341 (d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1702j-3(d) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

> (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

**(C)  No Waiver**

If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

**(D)  Regulations of HUD**

In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid.  This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**(E)  Mortgage Not Insured**

Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

_Angela L McFalls_ _____ 5/18/11          _David McFalls Jr_ _____ 5/18/11
Angela L McFalls              Date              David McFalls Jr              Date

_____              _____
                        Date                                      Date

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A. SUCCESSOR BY MERGER
TO BAC HOME LOANS SERVICING, LP

BY: _____
MICHAEL A. DEBBS
ASSISTANT VICE PRESIDENT

**Assistant Secretary**

Initials _____
FHA Amndd Rsttd Note–Multi  11339  02/10/2010